**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-cr-00613 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| HERIBERTO CARBAJAL-FLORES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Heriberto Carbajal-Flores ("Carbajal-Flores") is charged with possession of a firearm while illegally or unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5). On April 13, 2022, the Court denied Carbajal-Flores' first motion to dismiss the indictment [57] under the Second Amendment, the Commerce Clause, the Equal Protection Clause, and on the grounds that the indictment generally "fails rational basis scrutiny." Before the Court is his second motion to dismiss the indictment [64]. For the following reasons, the Court denies the motion.

**Background**

The Court presumes familiarity with its April 13, 2022 order denying Carbajal-Flores' first motion to dismiss. As relevant here, on June 1, 2020, Defendant possessed a handgun in the Little Village neighborhood of Chicago, Illinois. Carbajal-Flores contends that he received and used the handgun for self-protection and protection of property. Because of Carbajal-Flores' citizenship status, he was charged in violation of 18 U.S.C. § 922(g)(5), which prohibits any noncitizen who is not legally authorized to be in the United States from "possess[ing] in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

**Discussion**

Carbajal-Flores bring his renewed motion to dismiss on Second Amendment grounds in light of recent Supreme Court case *New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022) [hereinafter "*Bruen*"]. In *Bruen*, the Supreme Court affirmed that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. at 2122. In so doing, the Supreme Court revisited the framework under which courts analyze the constitutionality of firearm restrictions. Carbajal-Flores argues that the *Bruen* decision warrants review of § 922(g)(5)'s constitutionality.

Prior to *Bruen*, Courts of Appeal applied a two-step test to Second Amendment firearm restriction challenges—first, courts assessed whether the regulated activity fell within the original scope of the right based on its historical meaning; if so, they determined whether Congress' implementation of the regulation served a sufficiently important government interest. *See, e.g., United States v. Meza-Rodriguez*, 798 F.3d 664, 673 (7th Cir. 2015). The *Bruen* court subsequently rejected the interest-balancing inquiry and announced the proper test. 142 S. Ct. at 2127. First, courts must determine whether the "Second Amendment's plain text covers an individual's conduct." *Id.* at 2129–30. If so, the Constitution presumptively protects that conduct and the burden shifts to the government to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126. Only then may the Court conclude that the "individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10, 81 S. Ct. 997, 6 L. Ed. 2d 105 (1961)).

In the present case, Carbajal-Flores argues that § 922(g)(5) does not pass either prong of the *Bruen* test. First, he contends that his conduct, possession of a firearm as an unauthorized noncitizen, is covered by the Second Amendment. Second, he maintains that § 922(g)(5) is not

consistent with historical firearm regulation in the United States and shares no historical legal analogue.

Plain Text of the Second Amendment

The government challenges the first prong of the *Bruen* test—whether Carbajal-Flores' conduct is covered by the plain text of the Second Amendment, which reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The government argues that Carbajal-Flores' conduct is not covered because he is not a "law-abiding" resident of the United States and therefore not one of the "people" entitled to "keep and bear arms." Carbajal-Flores violated the law, the government contends, because he remained in the United States unlawfully, possessed a weapon without a valid FOID card, possessed a firearm not registered to him, received the firearm in an illegal street transaction, and pointed and shot the weapon at passing cars. (Dkt. 68, at 9–10.)

Carbajal-Flores responds that Seventh Circuit precedent precludes the government's argument. In *United States v. Meza-Rodriguez,* 798 F.3d 664, 673 (7th Cir. 2015), the appellate court held that the Second Amendment protects the nation's undocumented residents right to bear arms (though it ultimately held that the government may permissibly restrict that right). Specifically, the court reasoned that "[n]o language in the Amendment supports [] a conclusion" that noncitizens are excluded from "the people" protected by the Bill of Rights. *Id.* at 672. The Seventh Circuit is the only appellate court to make this determination. When confronted with the constitutionality of § 922(g)(5), four circuits assumed, without deciding, that the Second Amendment covers unauthorized noncitizens. *See United States v. Perez,* 6 F.4th 448 (2d Cir. 2021), *cert. denied,* 142 S. Ct. 1133, 212 L. Ed. 2d 20 (2022); *United States v. Torres,* 911 F.3d 1253 (9th Cir. 2019); *United States v. Huitron-Guizar,* 678 F.3d 1164 (10th Cir. 2012); *United States v. Jimenez-Shilon,* 34 F.4th 1042 (11th Cir. 2022). The remaining circuits determined that the Second Amendment does not confer rights to

such individuals. *See United States v. Carpio-Leon*, 701 F.3d 974 (4th Cir. 2012); *United States v. Portillo-Munoz*, 643 F.3d 437 (5th Cir. 2011); *United States v. Flores*, 663 F.3d 1022 (8th Cir. 2011).

Though the government admits that the Seventh Circuit previously answered this issue in *Meza-Rodriguez*, it contends that the Court must revisit it post-*Bruen*. The government argues that because *Bruen* repeatedly emphasized that "law-abiding citizens" possess the right to bear arms, the Supreme Court signaled its approval of statutes regulating non-law-abiding individuals' ability to possess firearms. *See* 142 S. Ct. at 2122 ("[W]e recognize that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense."), and 2134 ("It is undisputed that petitioners [ ]—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects.").

Contrary to the government's argument, *Bruen*'s characterization of petitioners as "law-abiding citizens" does not control this Court's interpretation of "the people" covered by the Second Amendment. Similar arguments were made and rejected in *Meza-Rodriguez*. There, the Seventh Circuit did not to give weight to the Supreme Court's language in *District of Columbia v. Heller*, 554 U.S. 570, 580, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), linking Second Amendment rights to "law-abiding citizens." *See Meza-Rodriguez*, 798 F.3d at 669. The *Heller* court did not "attempt to define the term 'people,'" so the Seventh Circuit did not restrict the application of the Second Amendment to "law-abiding citizens." *Id.* Because *Bruen* similarly did not address the meaning of "the people," this Court will not "place more weight on these passing references than the Court itself did" by holding that unauthorized noncitizens possess no right to bear arms.[1] 142 S. Ct. at 2134 (holding that it was "undisputed that petitioners … are part of 'the people' whom the Second Amendment

---

[1] Additionally, the Court does not adopt the Third Circuit's holding, found in the government's supplemental brief, because it contravenes the above-cited Seventh Circuit precedent. *Range v. Att'y General*, -- F. 4th -- (3d Cir. 2022) ("[T]he Supreme Court's repeated characterization of Second Amendment rights as belonging to 'law-abiding' citizens supports our conclusion that individuals convicted of felony-equivalent crimes, like Range, fall outside 'the people' entitled to keep and bear arms.").

protects"); *see also id.* at 2157 (Alito, J., Concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun.").

The Second Amendment's Historical Tradition of Firearm Regulation

Section 922(g)(5) may nonetheless survive the constitutional challenge if the government can show its regulation is "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130. As part of this inquiry, the Court considers whether the United States has imposed analogous regulations on firearms. *Id.* at 2131. In other words, the government may show that states historically placed limits on the Second Amendment comparable to the challenged regulation. *Id.* at 2133. That said, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 2133 (emphasis in original).

In support of its argument, the government cites to its history of regulating noncitizens' firearm possession as compiled by other courts. Though conducted pre-*Bruen*, the Eleventh Circuit's analysis is particularly instructive. *See Jimenez-Shilon*, 34 F.4th at 1046–49. The Eleventh Circuit found that, beginning with the "laws of England predating the Founding," the right to bear arms (as codified in the English Declaration of Rights) "was not 'made available to the whole population.'" *Jimenez-Shilon*, 34 F.4th at 1046 (quoting *Heller*, 554 U.S. at 593). Thereafter, "[t]he English view carried across the Atlantic, where it was well understood that the right to bear arms 'did not extend to all New World residents.'" *Id.* at 1047 (quoting Joyce Lee Malcolm, *To Keep and Bear Arms: The Origin of an Anglo-American Right* 140 (1994)). For example, several colonies banned gun ownership by slaves, Native Americans, and those unwilling to take an oath of allegiance to the state. *Id.* at 1047–48 (citations omitted). A number of early state constitutions also limited the right to keep and bear arms to "citizens." *Id.* at 1049 (compiling citations).

In response, Carbajal-Flores argues that the government cannot place § 922(g)(5) in American historical traditions because the federal government did not restrict entry into the country

5

until the late nineteenth century. Though the concept of citizenship has changed over time, the prior restrictions identified by the government must only be a "representative historical *analogue*, not a historical *twin*." *Bruen*, 142 S. Ct. at 2133 (emphasis in original). Therefore, the Court joins the Eleventh Circuit (and others) in concluding that the historical precedent from before, during, and after the founding shows a tradition of regulating noncitizens' right to keep and bear arms comparable to § 922(g)(5). *See Perez*, 6 F.4th at 462–63 (Menashi, J., concurring) (quotation omitted) (detailing a history of colonial America in which "alien men… did not have the right to bear arms"); *United States v. DaSilva*, No. 3:21-CR-267, 2022 WL 127242870, at *12 (M.D. Penn. Nov. 23, 2022) ("[A] substantial historical and traditional basis from the pre-Founding Era and Founding Era exists which provides well-established and representative historical analogues to § 922(g)(5) prohibiting an illegal alien from possessing a firearm and ammunition.").

Ultimately, the government identifies historical limitations on noncitizens' right to bear arms, justifying its regulation. Because the government meets its burden under the second prong of the *Bruen* test, Carbajal-Flores' indictment under § 922(g)(5) is not in violation of the Second Amendment. Defendant's motion to dismiss the indictment [64] is denied.

**IT IS SO ORDERED.**

Date: 12/19/2022

Entered:

SHARON JOHNSON COLEMAN
United States District Judge