**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-cr-00613 |
| | ) | |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| HERIBERTO CARBAJAL-FLORES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Heriberto Carbajal-Flores ("Carbajal-Flores") is charged with possession of a firearm while illegally or unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5). On April 13, 2022, the Court denied Carbajal-Flores' first motion to dismiss the indictment [57]. On December 19, 2022, this Court denied Carbajal-Flores' second motion to dismiss the indictment [74] on Second Amendment grounds in light of recent Supreme Court case *New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022). Before the Court is Carbajal-Flores' renewed motion to dismiss [83] in light of the Third Circuit's recent decision in *Range v. Garland*, 69 F.4th 96 (3d Cir. 2023), and the Seventh Circuit's decision in *Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023). For the reasons below, this Court grants the motion to dismiss.

**Background**

The Court presumes familiarity with its April 13, 2022 order denying Carbajal-Flores' first motion to dismiss. As relevant here, on June 1, 2020, Carbajal-Flores possessed a handgun in the Little Village neighborhood of Chicago, Illinois.

Carbajal-Flores contends that he received and used the handgun for self-protection and protection of property. Because of Carbajal-Flores' citizenship status, he was charged in violation of 18 U.S.C. § 922(g)(5), which prohibits any noncitizen who is not legally authorized to be in the

United States from "possess[ing] in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

Carbajal-Flores's criminal record reflects no felony convictions [11]. On February 26, 2024, Pre-Trial Services issues a Pre-Trial Release Status Update on Carbajal Flores [99]. The report found that Carbajal-Flores has consistently adhered to and fulfilled all the stipulated conditions of his release. Pretrial Services has conducted numerous employment visits at various sites, and Carbajal-Flores consistently provides the necessary documentation to verify his income when requested. A criminal record check conducted through the National Crime Information Center reflects no new arrests or outstanding warrants.

**Legal Standard**

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds. *See United States v. Coscia*, 866 F.3d 782, 790 (7th Cir. 2017) (considering defendant's contention that the indictment must be dismissed because the statute under which it is brought is unconstitutionally vague). A court may decide all questions of law raised in a motion to dismiss, including the constitutionality and interpretation of a federal statute. *See United States v. Sorich*, 523 F.3d 702, 706 (7th Cir. 2008).

**Discussion**

*A. Motion for Reconsideration*

As an initial matter, the Court addresses whether it is proper to reconsider its prior ruling. Although Carbajal-Flores has styled his motion as a "renewed" motion to dismiss the indictment,

the motion is, in effect, a motion for reconsideration of an issue already decided by this Court: whether § 922(g)(5) is constitutional under the Second Amendment.

Although the Rules of Criminal Procedure do not authorize or even mention motions to reconsider, *United States v. Rollins,* 607 F.3d 500, 502 (7th Cir. 2010) (the rules of criminal procedure "lack a counterpart to the motions authorized by Fed. R. Civ. P. 50(b), 52(b), or 59"), the United States Supreme Court has held that motions to reconsider may be filed in criminal cases in district courts. *See United States v. Healy,* 376 U.S. 75, 77, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964); *see also Rollins,* 607 F.3d at 502 ("[Motions to reconsider] are ordinary elements of federal practice that exist in criminal prosecutions despite their omission from the Rules of Criminal Procedure."); *United States v. Kalinowski,* 890 F.2d 878, 881 (7th Cir. 1989). Therefore, motions to reconsider may be filed in criminal actions or cases. *See Rollins,* 607 F.3d at 503 (citing *United States v. Dieter,* 429 U.S. 6, 8, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976)). Motions for reconsideration are utilized for very limited purposes: to correct manifest errors of law or fact, present newly discovered evidence, or to address an intervening and substantial change in the controlling law occurring after the submission of the issues to the court. *See United States v. Linder*, No. 12 CR 22, 2013 WL 505214, at *2 (N.D. Ill. Feb. 12, 2013) (Kendall, J.) (citing *Cosgrove v. Bartolotta,* 150 F.3d 729, 732 (7th Cir. 1988)).

Carbajal-Flores asserts that the Third Circuit's recent decision in *Range v. Garland*, 69 F.4th 96 (3d Cir. 2023), and the Seventh Circuit's decision in *Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023) signify a change in law warranting dismissal of the indictment. The government argues that Carbajal-Flores' motion for consideration must fail because neither of the two cases upon which Carbajal-Flores relies adversely affects this Court's earlier decision to uphold Section 922(g)(5) as constitutional. While this Court agrees that *Range* is not binding on this Court, the Seventh Circuit's holding in *Atkinson* warrants discussion.

In *Atkinson*, the Seventh Circuit clarified the analysis demanded by *Bruen*'s text-and-history test in considering whether Section 922(g)(1) is constitutional. As guidance, the Seventh Circuit proposed a set of "interrelated and non-exhaustive questions [that] may help focus the proper analysis:"

1. Does [Section 922(g)(1)] address a "general societal problem that has persisted since the 18th century?" *Bruen*, 142 S. Ct. at 2131. If this problem existed during a relevant historical period, did earlier generations address it with similar or "materially different means?" *Id.*

2. What does history tell us about disarming those convicted of crimes generally and of felonies in particular? Among other sources, the parties could look to commentary from the Founders, proposals emerging from the states' constitutional ratifying conventions, any actual practices of disarming felons or criminals more generally around the time of the Founding, and treatment of felons outside of the gun context (to the extent this treatment is probative of the Founders' views of the Second Amendment). When considering historical regulations and practices, the key question is whether those regulations and practices are comparable in substance to the restriction[s] imposed by [Section 922(g)(1)]. To answer the question, . . . the parties should consider how the breadth, severity, and the underlying rationale of the historical examples stack up against [Section 922(g)(1)].

3. Are there broader historical analogues to [Section 922(g)(1)] during the periods that *Bruen* emphasized, including, but not limited to, laws disarming "dangerous" groups other than felons? The parties should not stop at compiling lists of historical firearms regulations and practices. The proper inquiry, as we have explained, should focus on how the substance of the historical examples compares to [Section 922(g)(1)].

4. If the [parties'] historical inquiry identifies analogous laws, do those laws supply enough of a historical tradition (as opposed to isolated instances of regulation) to support [Section 922(g)(1)]? On this front, the parties should provide details about the enforcement, impact, or judicial scrutiny of these laws, to the extent possible.

5. If history supports [Defendant's] call for individualized assessments or for a distinction between violent and non-violent felonies, how do we define a non-violent or a non-dangerous felony? And what evidence can a court consider in assessing whether a particular felony conviction was violent? For instance, can a court consider the felony conviction itself, the facts of the underlying crime, or sentencing enhancements? *Bruen*

4

shows that these distinctions should also have firm historical support. *See* 142 S. Ct. at 2132–33 (explaining that the court must assess whether modern and historical regulations are "relevantly similar," including in terms of how and why the regulations burden gun rights).

*Atkinson*, 70 F.4th at 1023–24.

While the Seventh Circuit offered these questions in the context of Section 922(g)(1), nothing in *Atkinson* requires that these clarifying questions be asked only in the context of Section 922(g)(1) or prevents these questions of being asked when analyzing the historical tradition under *Bruen* in other statutes. Questions 1 and 4 are general enough to be asked on any statue. Questions 2, 3, and 5 may ask specific questions in the context of 922(g)(1), but the concepts of the questions can also easily be applied to other statues. Indeed, it would likely cause more confusion to fail to apply *Atkinson* when assessing other statutes given the decision's goal of clarifying *Bruen's* historical tradition analysis. Finally, other courts in this circuit have applied *Atkinson* to 922(g)(5). *See United States v. Gonzalez-Flores*, No. 23-CR-30021, 2023 WL 5501218, at *1 (C.D. Ill. Aug. 24, 2023). Thus, the Court will reconsider its prior ruling in light of *Atkinson*.

### B. Second Amendment

In *Bruen*, the Supreme Court established a framework for analyzing whether a challenged firearm regulation violates the Second Amendment. First, *Bruen* instructs courts to determine whether the Second Amendment's plain text covers an individual's conduct. If it does, the conduct is "presumptively protect[ed]," and the government bears the burden of demonstrating that the challenged regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129–30.

This Court previously held that (1) Carbajal-Flores' conduct is covered by the plain text of the Second Amendment. *See United States v. Carbajal-Flores*, No. 20-CR-00613, 2022 WL 17752395, at *3 (N.D. Ill. Dec. 19, 2022) (Coleman, J.). Nothing has occurred that would cause the Court to

depart from its prior ruling. Although the Second Amendment's plain text presumptively protects firearms possession by undocumented persons, that does not end the analysis. Under *Bruen*, if the government can show that the felon dispossession statute is part of this country's historical tradition of firearm regulation, then the statute survives. 142 S. Ct. at 2126, 2130. Thus, the Court will re-analyze the historical tradition with *Atkinson*'s guidance.

The government argues that the historical record establishes that legislatures categorically disarmed (1) individuals who were not members of the political community and (2) individuals who threatened the social order through their untrustworthy adherence to the rule of law. This Court recently issued opinions guided by *Atkinson* on identical Section 922(g)(1) challenges that discussed the government's position regarding the "untrustworthy adherents to the law" historical analogue. *See United States of America v. Dionte Vaughns*, No. 22-CR-00636, 2023 WL 8258575 (N.D. Ill. Nov. 29, 2023) (Coleman, J.); *United States of America v. Tyriiq Washington*, No. 23-CR-00274, 2023 WL 8258654 (N.D. Ill. Nov. 29, 2023) (Coleman, J.); *United States of America v. Darrell Griffin*, No. 21-CR-00693, 2023 WL 8281564 (N.D. Ill. Nov. 30, 2023) (Coleman, J.). Because the government's arguments are identical in this case, this Court adopts and incorporates the reasoning of those opinions as to the finding that Section 922(g)(5) is facially constitutional.[1]

The Court now turns to Carbajal-Flores' as-applied challenge to Section 922(g)(5)'s constitutionality. This Court found that the British loyalist example in the "untrustworthy adherents to the law" historical analogue contained an exception allowing British loyalists to sign loyalty oaths. *Griffin*, 2023 WL 8281564, at *8-9. This exception necessarily requires an individualized assessment to determine if the former British loyalist is so "untrustworthy" or "dangerous" that they should be barred from possessing a weapon. *Id.* The Court also determined that based on the government's

---

[1] It stands to reason that this Court can apply its reasoning from a Section 922(g)(1) case in a Section 922(g)(5) case where the government makes identical arguments in both.

historical analogue, where exceptions were made that allowed formerly "untrustworthy" British loyalists to possess weapons, the individuals who fell within the exception were determined to be non-violent during their individual assessments, permitting them to carry firearms. *Id.* While the analysis in *Griffin* was in the context of felons in possession of firearms, the Court finds that the identical government arguments and analogies are equally applicable to noncitizens unlawfully present in the country. Thus, to the extent the exception shows that some British loyalists were permitted to carry firearms despite the general prohibition, the Court interprets this history as supporting an individualized assessment for Section 922(g)(5) as this Court previously found with Section 922(g)(1). *Id.*

The government argues that Carbajal-Flores is a noncitizen who is unlawfully present in this country. The Court notes, however, that Carbajal-Flores has never been convicted of a felony, a violent crime, or a crime involving the use of a weapon. Even in the present case, Carbajal-Flores contends that he received and used the handgun solely for self-protection and protection of property during a time of documented civil unrest in the Spring of 2020. Additionally, Pretrial Service has confirmed that Carbajal-Flores has consistently adhered to and fulfilled all the stipulated conditions of his release, is gainfully employed, and has no new arrests or outstanding warrants. The Court finds that Carbajal-Flores' criminal record, containing no improper use of a weapon, as well as the non-violent circumstances of his arrest do not support a finding that he poses a risk to public safety such that he cannot be trusted to use a weapon responsibly and should be deprived of his Second Amendment right to bear arms in self-defense. Thus, this Court finds that, as applied to Carbajal-Flores, Section 922(g)(5) is unconstitutional.

**Conclusion**

The noncitizen possession statute, 18 U.S.C. § 922(g)(5), violates the Second Amendment as applied to Carbajal-Flores. Thus, the Court grants Carbajal-Flores' motion to dismiss [83].

**IT IS SO ORDERED.**

Date: 3/8/2024                    Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge